IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NELSON BEFITEL, State of Hawaii, Director of Labor and Industrial Relations, | ) ) ) ) | Civ. No. 06-00366 ACK-KSC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| GLOBAL HORIZONS, INCORPORATED, a California corporation registered to do business in Hawaii, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

<u>ORDER ADOPTING THE FINDINGS AND RECOMMENDATION TO REMAND ACTION</u>

<u>BACKGROUND</u>

On May 30, 2006, Nelson Befitel, the Director of Labor and Industrial Relations, State of Hawaii ("Plaintiff") filed a Complaint in the District Court of the First Circuit, Honolulu Division against Global Horizons, Inc. ("Defendant") for unpaid Unemployment Insurance Contributions, employment and training assessments, and penalties and interest pursuant to Chapter 383 of the Hawaii Revised Statutes ("H.R.S."). Plaintiff seeks a judgment of $177,232.56 in this action from Defendant, a California corporation. Defendant removed this action to federal court on June 30, 2006, alleging complete diversity between the parties.

On July 27, 2006, Plaintiff filed a Motion to Remand

1

the civil action back to the state district court.  Defendant

filed an Opposition to the motion on August 25, 2006, and

Plaintiff filed a Reply on September 1, 2006.  Magistrate Judge

Chang (the "Magistrate") held a hearing on September 13, 2006,

and granted Plaintiff's Motion to Remand.  The Magistrate then

issued his Findings and Recommendation to Remand Action on

September 25, 2006 ("F&R").

On October 10, 2006, Defendant submitted Objections to

Magistrate Judge's Findings and Recommendation to Remand Action

("Defendant's Objection").  Then, on October 20, 2006, Plaintiff

filed a Response to Defendant's Objections to the F&R

("Plaintiff's Response").  On October 26, 2006, Defendant filed a

Motion for Leave to File a Reply to Plaintiff's Response, along

with its Reply ("Defendant's Reply").

## FINDINGS AND RECOMMENDATION

Defendant objects to the F&R, in which the Magistrate

made the following four findings:

> (1) Plaintiff's claims are in the nature of assumpsit
> because Plaintiff seeks to collect a sum certain from
> Defendant.
>
> (2) Plaintiff, the Director of the Department of Labor
> and Industrial Relations, brought this action pursuant
> to section 383-71(a), Hawaii Revised Statutes and the
> State of Hawaii is the real party in interest.
>
> (3) Plaintiff is not a separate political subdivision
> and is not like a county or municipality, but instead
> is acting as an arm of the State of Hawaii.
>
> (4) The State of Hawaii is not a citizen for the

purposes of diversity.

F&R at 2.  Based on these findings, the Magistrate recommended that "Plaintiff's Motion be GRANTED as the Court does not have subject matter jurisdiction in this case."  Id.

### STANDARD

A district court reviews de novo a magistrate's findings and recommendation that an action be remanded to state court.  See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); L.R. 74.2.  The court may accept, reject or modify and accept as modified the same.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); L.R. 74.2.  De novo review means the district court must consider the matter anew, as if it had not been heard before and as if no decision previously had been rendered.  See Ness v. Commissioner of Internal Revenue Service, 954 F.2d 1495, 1497 (9th Cir. 1992).  The district court must arrive at its own independent conclusion about those portions of the magistrate's ruling to which objections are made, but a de novo hearing is not required.  United States v. Remsing, 874 F.2d 614, 617-18 (9th Cir. 1989); L.R. 74.2.

### DISCUSSION

### I.   Defendant's Motion for Leave to File a Reply

Defendant filed a Motion for Leave to File a Reply to Plaintiff's Response to its objections to the F&R.  Local Rule 74.2 states that "[n]o reply in support of the objections or

cross-objections . . . shall be filed without leave of the court." Id. Defendant bases its request on the brevity of the reply (approximately 300 words) and its belief that the reply will help clarify the issues for the Court.  The Court GRANTS Defendant's Motion for Leave to File a Reply for good cause.

## II.  **Defendant's Objection to the F&R**

        Defendant removed this action to federal court claiming diversity jurisdiction exists between the parties pursuant to 28 U.S.C. § 1332(a)(1), which states "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States . . . ."  28 U.S.C. § 1332(a)(1).  In diversity cases, the burden of proving all jurisdictional facts rests on the party seeking jurisdiction.  Kanter v. Warner-Lambert Co., 265 F.3d 853, 857-58 (9th Cir. 2001).  Diversity jurisdiction is to be strictly construed and any doubts are to be resolved in favor of remand to the state court. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088, 1092 (9th Cir. 1983).

        It is undisputed that Defendant is a California corporation, and therefore is a citizen of California.  28 U.S.C. § 1332(c)(1).  The matter before the Court is whether Plaintiff is  considered a citizen of the State of Hawaii for diversity

purposes, and specifically whether Nelson Befitel, acting as the Director of Labor and Industrial Relations, operates as an "arm or alter ego of the State" or a "political subdivision." Moor v. County of Alameda, 411 U.S. 693, 717, 93 S. Ct. 1785 (1973).

It is clear that a state is not a citizen for the purposes of diversity jurisdiction. Id. Also, an "arm or alter ego of the State" is not a citizen for diversity purposes. Id. However, relying on the rule that corporations are citizens of the state in which they are formed, the Supreme Court has repeatedly held that political subdivisions, such as counties, are citizens. Id. at 718 (citing Illinois v. City of Milwaukee, 406 U.S. 91, 97, 92 S. Ct. 1385 (1972)). The Magistrate concluded that Plaintiff operates as an arm of the State of Hawaii, and not as a separate political subdivision. F&R at 2, ¶ 3. Defendant objects and the Court reviews that determination de novo.

## A.   Diversity Jurisdiction Analysis

Defendant contends that the Magistrate erred in failing to apply the Eleventh Amendment immunity analysis as prescribed in Jackson v. Hayakawa, 682 F.2d 1344 (9th Cir. 1982). As Defendant explains, the Ninth Circuit does not appear to have explicitly ruled as to whether the precise Eleventh Amendment immunity test also applies to the determination of citizenship for the purposes of diversity jurisdiction. However, the Ninth

Circuit has recognized that "a similar rule controls the determination of diversity jurisdiction when individual state officers or agencies are named in lieu of the state" as the Eleventh Amendment analysis.  Ronwin v. Shapiro, 657 F.2d 1071, 1073 (9th Cir. 1981).  The weight of authority from other circuits supports this similarity.  Maryland Stadium Authority v. Ellerbe Becket Inc., 407 F.3d 255, 260-61 (4th Cir. 2005) (adopting the same four factor Eleventh Amendment immunity analysis for diversity jurisdiction analysis); University of South Alabama v. American Tobacco Co., 168 F.3d 405, 412 (11th Cir. 1999) (holding that although the "question of diversity jurisdiction is distinct from that of immunity," the analysis of citizenship determinations for Eleventh Amendment immunity and diversity jurisdiction are the same); Tradigrain, Inc. v. Mississippi State Port Authority, 701 F.2d 1131, 1132 (5th Cir. 1983) (concluding that the Eleventh Amendment immunity and diversity jurisdiction analyses are "virtually identical"); University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200, 1202-03 n. 4 (1st Cir. 1993) (rejecting two proposed distinctions between the Eleventh Amendment and diversity considerations).

The Ninth Circuit acknowledges one distinction between diversity jurisdiction and Eleventh Amendment immunity.  A state, or its alter ego, may waive its Eleventh Amendment privilege, but cannot create diversity jurisdiction.  Fifty Associates v.

Prudential Insurance Company of America, 446 F.2d 1187, 1192 (9th Cir. 1970).  The First Circuit addressed this distinction and found that it did not create any differences between the inquiry into "relevant attributes of autonomy" for immunity or diversity purposes.  University of Rhode Island, 2 F.3d at 1203 n. 4.  The assessment of the validity of an immunity waiver occurs after a determination that an entity is an alter ego of the state, and thus the right to waive immunity has no bearing on whether that entity exists as an arm of the state or a political subdivision. Id.

Plaintiff objects to an application of the Eleventh Amendment immunity analysis to a consideration of citizenship for diversity jurisdiction purposes.  Plaintiff's Response at 4-6. Plaintiff argues simply that the State of Hawaii is the real party to the lawsuit, and under Moor, diversity jurisdiction does not exist.  411 U.S. at 717.  However, by endorsing the Moor analysis, Plaintiff actually promotes a very similar set of factors to assess the identity of an entity for diversity jurisdiction purposes as those factors utilized in the Ninth Circuit's Eleventh Amendment immunity analysis that was codified in Jackson.

The Ninth Circuit implements a five-factor balancing test to determine whether an entity is a state agency for Eleventh Amendment immunity purposes.  Jackson, 682 F.2d at 1350;

see also Belanger v. Madera Unified School Dist., 963 F.2d 248, 250-51 (9th Cir. 1992); Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1988).  The five factors of the Jackson test are "(1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity."  Belanger, 963 F.2d at 250-51 (citing Jackson 682 F.2d at 1349-50).  In this consideration, the first factor regarding liability for money judgments is the most crucial.  Jackson, 682 F.2d at 1350.

In Moor, the Supreme Court addressed whether the County of Alameda is a political subdivision for the purposes of diversity jurisdiction.  411 U.S. at 718-19.  In making its determination, the court considered the corporate status of the county; whether it could sue and be sued; financial liability for judgments against the county; the ability to hold property; and the functions performed by the county.  Id. at 719.  Thus, the Jackson test and the Moor analysis consider virtually identical factors.  The only significant difference between the two tests appears to be whether the financial liability factor is weighed more heavily than the other factors.  Previously, the Ninth Circuit, in assessing the identity of government entities for

diversity jurisdiction purposes, considered similar factors without emphasizing the financial liability factor. <u>Fowler v. California Toll-Bridge Authority</u>, 128 F.2d 549, 550-51 (9th Cir. 1942).

De-emphasizing the financial liability factor in the context of diversity jurisdiction analysis also comports with the divergent rationales for Eleventh Amendment immunity and diversity jurisdiction. The Eleventh Amendment aims to protect states from lawsuits, while the limitations on diversity jurisdiction are meant to limit states' appearances in federal court. <u>Compare</u> 15 James Moore et al., Moore's Federal Practice ¶ 102.13 (3d ed. 1999) <u>with</u> 17A Moore's Federal Practice ¶ 123.03[2].

In conclusion, as the five factors from the Eleventh Amendment <u>Jackson</u> test mirror so closely those from the Supreme Court's diversity jurisdiction analysis in <u>Moor</u>, the Court finds that it is appropriate to use those factors to assess whether Plaintiff operates as an arm of the state or as a political subdivision. The Court will not apply the extra weight to the financial liability factor generally afforded in the Eleventh Amendment context, but will consider it along with the other factors.

**B.    Identity of the Department of Labor and Industrial Relations**

The Court now turns to whether the Department of Labor

and Industrial Relations (the "Department"), of which Plaintiff
is the Director, is an agency operating as an arm or alter ego of
the State of Hawaii, or a political subdivision.  This evaluation
is to be done in light of the way Hawaii law treats the
Department.  <u>Moor</u>, 411 U.S. at 718-21; <u>Jackson</u>, 682 F.2d at 1350;
<u>Belanger</u>, 963 F.2d at 251.  Before turning to the relevant
factors, the Court notes that the District of Hawaii recently
determined that the Department is an agency of the state for
Eleventh Amendment purposes, and therefore is generally protected
from lawsuits.  In <u>Barch v. State of Hawaii Department of Labor &
Industrial Relations</u>, the court found that the Department was a
state agency protected by the Eleventh Amendment, comparing it to
the State of Hawaii, Department of Education.  2006 WL 3078933,
*5 (D. Haw. 2006) (<u>citing</u> <u>Office of Hawaiian Affairs v.
Department of Education</u>, 951 F. Supp. 1484, 1492 (D. Haw. 1996)).
The Department of Labor and Industrial Relations and the
Department of Education are two of the seventeen principal
departments of the State of Hawaii authorized by the Hawaii State
Constitution.  <u>See</u> HAW. CONST. Art. 5, § 6.[1]  With this history

---

[1] The Ninth Circuit also implicitly recognized that the
Department is a state agency that is afforded immunity
protections under the Eleventh Amendment.  <u>Vinson v. Thomas</u>, 288
F.3d 1145, 1151 (9th Cir. 2002).  In <u>Vinson</u>, the court found that
the Department had waived its immunity from suits pursuant to the
Rehabilitation Act.  <u>Id.</u>  Although not addressed by the Ninth
Circuit, in order for the court to have reached the conclusion
that the Department waived its immunity, it must have assumed
(continued...)

in mind, the Court assesses the factors relevant to the identity of the Department for determining diversity jurisdiction.

## 1. Corporate Status

As stated before, since corporations are citizens of the state in which they are formed, the Supreme Court has repeatedly held that political subdivisions that are incorporated, such as counties, may be sued as citizens under diversity jurisdiction. <u>Moor</u>, 411 U.S. at 718 (<u>citing</u> <u>City of Milwaukee</u>, 406 U.S. at 97); <u>see also</u> <u>Cowles v. Mercer County</u>, 7 Wall. 118, 19 L. Ed. 86 (1969). The Department is not a corporation. Plaintiff's Response at 8. Rather, it is a principal department of the State of Hawaii, authorized by the Hawaii Constitution and created by Hawaii statute. HAW. CONST. Art. 5, § 6; H.R.S. § 26-20. This factor weighs in favor of construing the Department to be an agency operating as an arm of the state.

## 2. Financial Liability for the State Treasury

Defendant attempts to transform the financial liability factor into a more general financial independence factor. Defendant's Objection at 6-9. In both <u>Jackson</u> and <u>Moor</u>, the courts focus on whether the state treasury is insulated from suits where the government agency in question may be held liable

---

[1](...continued)
that the Department is entitled to Eleventh Amendment protections in the first place.

for monetary damages.   Plaintiff concedes that any successful
judgment in this case will not directly impact the state
treasury.   Plaintiff's Response at 6.   However, when the Ninth
Circuit was faced with the possibility of the Department being
held liable for monetary damages in <u>Vinson</u>, it first assumed that
the Department was protected by the Eleventh Amendment, and then
determined that it waived its protections.   288 F.3d at 1151.
Significantly, the Ninth Circuit based its conclusion that the
Department waived its immunity on the fact that "the State of
Hawaii accepted federal Rehabilitation Act funds."   <u>Id.</u>   While it
is unclear whether the Department itself would have been liable
for any potential damages awarded in <u>Vinson</u>, or whether recovery
would have come from the state treasury, the Ninth Circuit
undoubtedly relied on a link between the state's treasury and the
status of the Department in making its ruling.

        The financial identity of the Department is also not as
independent from the state as Defendant claims.   Some elements of
the Unemployment Compensation Fund (the "Fund") appear to
distance the Department from the state.   The Fund is created
within the state treasury as "a special fund, separate and apart
from all public moneys or funds of the State."   H.R.S. § 383-121.
It is also true that the Department is responsible for any costs
incurred for legal services required to carry out its duties and
responsibilities.   H.R.S. § 383-91(e).

Other attributes of the Fund provide a close link between the Department and the state.  While the Fund is distinct from public moneys, it is created within the state treasury. Also, despite the Fund's apparent autonomy, it is maintained by the state's Director of Finance, from the Department of Finance, not the Director of the Department of Labor and Industrial Relations.  H.R.S. 383-122.  In addition, the Fund may receive contributions in the form of "all moneys credited to this State's account in the unemployment trust fund pursuant to section 903 of the Social Security Act. . . ."  H.R.S. 383-121.  There is an additional requirement that moneys lost or expended for purposes other than those authorized for proper administration of the Department, must be reimbursed from the general funds of the state.  H.R.S. § 383-126.

In sum, the financial identity of the Department is not completely autonomous from the state.  The Department's fund exists within the state treasury and is maintained by the state's Director of Finance.  While this particular cause of action poses no risk of monetary liability to the state, there are conceivable circumstances where a judgment against the Department could impact the state treasury.  <u>See</u> <u>Vinson</u>, 288 F.3d at 1151.  For these reasons, the Court concludes that this factor weighs slightly in favor of construing the Department to be an agency operating as an arm of the state.

13

### 3.    Essential Government Functions

The Department's purposes are to mold, monitor, and strengthen the state's employment sector.  By statute, the Department shall:

> administer programs designed to increase the economic security, physical and economic well-being, and productivity of workers, and to achieve good labor-management relations, including the administration of workers' compensation, employment security, apprenticeship training, wage and hour, and industrial relations laws. The department shall also have the function of developing, preparing, and disseminating information on employment, unemployment, and general labor market conditions.

H.R.S. § 26-20.  These duties are essential government functions carried out for the ultimate benefit of the citizens of Hawaii. This factor weighs heavily in favor of construing the Department to be an agency operating as an arm of the state.

### 4.    Right to Sue or be Sued

Plaintiff concedes that the Department is authorized to sue an employer for the purposes of recovering delinquent payments to the Fund.  H.R.S. § 383-71(a).  It is also evident from <u>Vinson</u> that the Department may be sued in some instances. 288 F.3d at 1151.  This factor weighs in favor of concluding that the Department is a citizen of the state that may be sued in federal court pursuant to diversity jurisdiction.

### 5.    Power to Take Property in Own Name

The Department is authorized to seize and sell property

14

from employers to satisfy their debts to the Fund.  H.R.S. § 383-71(b).  The director of the Department possesses the property until it is sold.  Id.  In Moor, the Supreme Court specifically noted that the county could hold or otherwise deal property.  411 U.S. at 719.  The Department does not have such an unlimited power here.  The Department's only purpose in taking property is to collect the debts of employers to supplement the Fund.  H.R.S. § 383-71(b).  In fact, the Department must return to the employer any surplus earned in the sale of property that is greater than the employer's debt.  Id.  Thus, the Court concludes that the Department's ability to seize property only weighs very slightly, if it all, in favor of concluding that the Department is a citizen of the state that may be sued in federal court pursuant to diversity jurisdiction.

The overall weight of the factors identified by the Supreme Court in Moor and the Ninth Circuit in Jackson, leads this Court to conclude that Nelson Befitel, in his capacity as the Director of the Department of Labor and Industrial Relations, heads an agency that operates as an arm of the State of Hawaii. In addition, previous Ninth Circuit and District of Hawaii cases have considered the Department to be a state agency for the purposes of Eleventh Amendment immunity.  Finally, the Court reiterates that diversity jurisdiction is to be strictly construed and any doubts are to be resolved in favor of remand to

the state court.  Gaus, 980 F.2d at 566.

## C.   **Affirmative Defense**

Finally, Defendant attempts to construe this case as one where a federal question is at issue because it raises an issue of federal law as an affirmative defense.  Defendant's Objection at 12.  First, Defendant only sought to remove this case on the basis of diversity jurisdiction.  See Notice of Removal at 2, ¶ 1.  Second, it is well-established that a party may not invoke jurisdiction on the basis of an answer raising a federal defense.  Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1183 (9th Cir. 2002) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10-12, 103 S. Ct. 2841 (1983)); 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3566 at 83 (2d ed. 1984).  For these reasons, the Court declines to exercise jurisdiction based on Defendant's affirmative defense.

In conclusion, Defendant has failed to meet its burden of proving the jurisdictional facts necessary to establish a basis for diversity jurisdiction.  See Kanter, 265 F.3d at 857-58.  Accordingly, the Court adopts the Magistrate's F&R to remand the case to state court.

## III.  **Defendant's Request for an Evidentiary Hearing**

Defendant requests an evidentiary hearing to present

"all accurate and available information to this inquiry."
Defendant's Objection at 13-14.  "The district judge, however,
will not conduct a new hearing unless required by law, and may
consider the record developed before the magistrate judge, making
his or her own determination on the basis of that record."  L.R.
74.2; see also Remsing, 874 F.2d at 617-18.  "The district judge
may exercise discretion to receive further evidence, recall
witnesses, or recommit the matter to the magistrate judge with
instructions."  L.R. 74.2.  Defendant does not contend that an
evidentiary hearing is required by law; and the Court, in
exercising its discretion, finds that a hearing is not necessary.
The Court denies Defendant's request for an additional
evidentiary hearing.

<u>**CONCLUSION**</u>

        For the foregoing reasons, the Court ADOPTS the
Magistrate's Findings and Recommendation to Remand Action.  The
Court finds that Plaintiff, as Director of the Department of
Labor and Industrial Relations, operates as an arm of the State
of Hawaii.  Thus, Plaintiff is not a citizen of the State of
Hawaii for the purposes of establishing diversity jurisdiction.
There is also no basis for federal jurisdiction based on an
affirmative defense.

        In addition, the Court GRANTS Defendant's Motion for
Leave to File a Reply and DENIES Defendant's Request for an

Evidentiary Hearing.


      IT IS SO ORDERED.

      DATED: Honolulu, Hawaii, November 13, 2006.


_____
Alan C. Kay
Sr. United States District Judge